FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 SEP 29  AM 8: 56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAISY F. GUITART | CIVIL ACTION |
| VERSUS | NO. 05-243 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "J" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Daisy F. Guitart, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). 42 U.S.C. § 405(g). The Commissioner denied plaintiff's claim that her monthly retirement income benefits ("RIB") (also known as old age insurance benefits) under Title II of the Act, id. § 402(a), had been improperly reduced because of a monthly pension that she was also receiving, pursuant to the Windfall Elimination Provision ("WEP") of 1986, codified at 42 U.S.C. § 415(a)(7). This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

___ Fee _____
___ Process _____
_X_ Dktd _____
_V_ CtRmDep _____
___ Doc. No _____

As ordered, plaintiff filed a timely memorandum of facts and law.[1] Record Doc. No. 9. Defendant filed a timely opposition memorandum. Record Doc. No. 10.

I.   PROCEDURAL HISTORY

Plaintiff filed an application for RIB on January 12, 2001. (Tr. 18-20). The application was granted but her monthly benefit amount was reduced because she also receives pension benefits from the Teachers' Retirement System of Louisiana. Her request for reconsideration of the reduction was denied. (Tr. 27-29). On October 9, 2001, Guitart requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 30). Although she indicated on her hearing request form that she wanted to appear at a hearing, Guitart stated in a letter dated March 4, 2004 that she did <u>not</u> wish to appear and she asked that a decision be made on the record. (Tr. 10).

On June 16, 2004, without holding a hearing, the ALJ denied plaintiff's claim that the statute had been incorrectly applied to reduce her benefits. He did not address any of the constitutional issues she had raised. (Tr. 15-17). The Appeals Council denied Guitart's request for review on December 2, 2004 (Tr. 2-4), and the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

---

[1] Plaintiff is advised that, pursuant to a directive from the Judicial Conference of the United States and an order of the Chief Judge of this court, all parties must refrain from putting dates of birth and social security numbers in public records.

II. STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A. The ALJ violated plaintiff's due process rights because he decided her claim without giving her notice and a hearing, as she had requested.

B. The ALJ erred by applying the WEP retroactively to plaintiff's RIB because she was fully insured for life for RIB before 1986.

C. The ALJ's application of the WEP to Guitart is an ex post facto deprivation of property in violation of the Fifth Amendment to the United States Constitution.

D. The ALJ's application of the WEP to Guitart unconstitutionally discriminates between those persons "eligible to receive a pension before 1986 (Vested in a pension before 1986) and [those] eligible for Social Security . . . retirement benefits before 1986 (fully insured for life before 1986)." Plaintiff's memorandum at p.5, ¶ 3.

E. The Commissioner erred by applying an unfair and discriminatory law just because it was enacted by Congress.

III. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1. The WEP was correctly applied to plaintiff's RIB.

(Tr. 17).[2]

---

[2] The ALJ also found that "the Government Pension Offset was . . . correctly applied to the claimant's spouse's benefits on her husband's record." (Tr. 17). Although Guitart mentions in her memorandum that the ALJ improperly consolidated her separate claim for spouse's benefits with her claim for RIB, she has not appealed the finding regarding the offset to her spouse's benefits. Her complaint does not mention her claim for spouse's benefits, Record Doc. No. 1, and she states in her memorandum that she "reserves her legal and constitutional remedies on her claim for spouse's benefits."

IV.     ANALYSIS

   A.     Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma,

---

Record Doc. No. 9, at p.5.

4

503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

The court engages in a de novo review of an ALJ's application of legal standards. Gutierrez v. Barnhart, No. 04-11025, 2005 WL 1994289, at *4 (5th Cir. Aug. 19, 2005) (citing Hollis v. Bowen, 837 F.2d 1378, 1382-83 (5th Cir. 1988)).

B.   Factual Background

According to her memorandum of facts and law, plaintiff worked for a private employer from 1970 to 1983 and paid Social Security taxes during that employment. While she worked for the Orleans Parish School Board from 1983 to 1996, she was exempt from paying Social Security taxes. She applied for and received a retirement pension from the Teachers' Retirement System of Louisiana in 1996. Record Doc. No. 9, at p.2, ¶¶ 4-6.

According to the ALJ's opinion, Guitart first became eligible to retire and receive her teachers' retirement pension in January 1994. She became eligible to receive RIB

when she attained the age of 62 in 1998. (Tr. 17). She filed an application for RIB on January 12, 2001 (Tr. 18-20), which was granted, but her monthly benefits were reduced because of her receipt of the pension.

C.  Plaintiff's Appeal

  1.  *The ALJ did not violate plaintiff's due process rights by deciding her claim without giving her notice and a hearing.*

Plaintiff argues that the ALJ violated her procedural due process rights by failing to hold a hearing, as she had requested when she filed her request for a hearing on October 9, 2001. (Tr. 30). This argument lacks merit.

> Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citations and quotation omitted).

"The constitutional right to due process is not, however, an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections." Monk v. Huston, 340 F.3d 279, 282-83 (5th Cir. 2003). To bring a procedural due process claim, "a plaintiff must first identify a protected life, liberty or property interest and then prove

that governmental action resulted in a deprivation of that interest." Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001).

In the instant case, Guitart has no property interest in obtaining RIB. Social security benefits "are not contractual and may be altered or even eliminated at any time." United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 174 (1980) (citing Hisquierdo v. Hisquierdo, 439 U.S. 572, 575 (1979); Flemming v. Nestor, 363 U.S. 603, 608-11 (1960)); accord Bowen v. Owens, 476 U.S. 340, 345 (1985); DeJesus-Diaz v. Bowen, No. C87-939, 1989 WL 281931, at *4 (N.D. Ohio June 8, 1989) (Bartunek, M.J.); Robinson v. Bowen, No. 88-0-226, 1989 WL 280369, at *5 (D. Neb. Mar. 13, 1989) (Whipple, J.). Because Guitart has no property interest in obtaining RIB, the Due Process Clause is not implicated by her complaint.

Second, even if Guitart had a property interest in her RIB, the record establishes that she stated in a letter to the Commissioner dated March 4, 2004 that she did not wish to appear and she asked that a decision be made on the record. (Tr. 10). Plaintiff argues that this letter was directed to a different claim that she had made concerning her spouse's benefits, not her own RIB. However, the letter included both her and her husband's social security numbers after her signature. More importantly, the letter discussed her legal arguments concerning her RIB claim. The ALJ was substantially justified in his

understanding, stated in his decision, that Guitart was asking him to make a decision concerning her RIB claim without a hearing. (Tr. 15).

Moreover, it is clear that "procedural perfection in administrative proceedings is not required and procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the decision." Ferguson v. Barnhart, No. 02-849, 2003 WL 21277130, at *1 (E.D. La. May 30, 2003) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989).

It is the ALJ's duty to develop fully and fairly the facts relative to a claim for benefits. Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000). When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision and his decision is therefore not supported by substantial evidence. Id.

However, reversal of the ALJ's decision for failure to develop the record is appropriate only if the applicant shows that she was prejudiced by the failure. Id.; Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the

record, and that the additional evidence might have led to a different decision." Id. at 557 n.22 (citation omitted).

In the instant case, all of the facts necessary to decide plaintiff's claim for RIB are in the record and are undisputed. Guitart's arguments against the reduction in her benefits are purely legal arguments. The ALJ's failure to hold a hearing is not error that prejudices plaintiff's substantive rights, Morris, 864 F.2d at 335; Sartain v. Apfel, No. 99-1596, 2000 WL 193067, at *4 (E.D. La. Feb. 16, 2000) (Mitchell, J.) (citing Mays, 837 F.2d at 1364), because she has had ample opportunity to present her legal arguments in writing to the Commissioner and to this court, which will conduct a de novo review of the legal standards. See Das v. Department of Health & Human Servs., 17 F.3d 1250, 1255 (9th Cir. 1994) (plaintiff challenging application of WEP "was permitted one motion for reconsideration before the SSA, two hearings before ALJs, two requests for further review before the Appeals Council, and an appeal before the district court. Accordingly, Das has been given all the process that he is due.").

    2.  *The ALJ did not err by applying the WEP retroactively to plaintiff.*

Section 215(a)(7) of the Act (codified at 42 U.S.C. § 415(a)(7)) and the regulations interpreting the Act provide that the calculation of RIB

> for a claimant who is entitled to a pension based upon employment not covered by Social Security may be subject to an alternate formula, known

as the Windfall Elimination Provision ("WEP"). When applicable, a claimant is subject to the alternate formula if he became eligible for benefits after 1985 and also became eligible for a monthly periodic payment based in whole or in part upon earnings for non-covered employment after 1985.

Doyle v. Barnhart, No. 03-0264, 2004 WL 3254668, at *4 (E.D. Pa. Sept. 28, 2004) (Smith, M.J.) (citing 42 U.S.C. § 415(a)(7)(A);[3] 20 C.F.R. § 404.213(a)(1), (3) (2004)[4]),

---

[3]Section 415(a)(7) provides in relevant part:

In the case of an individual whose primary insurance amount [RIB] would be computed under paragraph (1) of this subsection, who--
(i) attains age 62 after 1985 . . . ,
and who first becomes eligible after 1985 for a monthly periodic payment . . . which is based in whole or in part upon his or her earnings for service which did not constitute "employment" as defined in section 410 of this title for purposes of this subchapter (hereafter . . . referred to as "noncovered service"), the primary insurance amount of that individual during his or her concurrent entitlement to such monthly periodic payment and to old-age or disability insurance benefits shall be computed or recomputed under subparagraph (B).

43 U.S.C. § 415(a)(7).

[4]20 C.F.R. § 404.213 implements the WEP in relevant part as follows:

Computation where you are eligible for a pension based on your noncovered employment.
(a) When applicable. Except as provided in paragraph (d) of this section, we will modify the formula prescribed in § 404.212 and in Appendix II of this Subpart in the following situations:
(1) You become eligible for old-age insurance benefits after 1985; or
. . .
(3) For the same months after 1985 that you are entitled to old-age . . . benefits, you are also entitled to a monthly pension(s) for which you first became eligible after 1985 based in whole or part on your earnings in employment which was not covered under Social Security. We consider you to first become eligible for a monthly pension in the first month for which you met all requirements for the pension except that you were working or had not yet applied. In determining whether you are eligible for a pension

report & recommendation adopted, 2005 WL 713343 (E.D. Pa. Mar. 28, 2005) (Baylson, J.).

Thus, the ALJ in the instant case held that plaintiff's RIB must be reduced pursuant to the WEP because (1) she became eligible for RIB when she turned age 62 in 1998, which is after 1985, and (2) she became eligible for her pension based on non-covered employment in January 1994, which is also after 1985. (Tr. 17).

Plaintiff argues that the WEP does not apply to her because she acquired "fully insured status" before 1986 and the WEP does not state that Congress intended to modify that status. By "fully insured status," she means that by 1980 she had acquired 40 quarters of employment coverage and had become eligible for future RIB.

This argument lacks merit. Although Guitart became "a fully insured individual" and therefore eligible for future RIB after she had acquired 40 quarters of coverage, 42 U.S.C. §§ 402(a), 414(a), she did not become "entitled" to receive such benefits until she turned age 62.

> Every individual who--
> (1) is a fully insured individual (as defined in section 414(a) of this title),
> (2) has attained age 62, and

---

before 1986, we consider all applicable service used by the pension-paying agency.
20 C.F.R. § 404.213 (2005).

11

> (3) has filed application for old-age insurance benefits . . . ,
> shall be <u>entitled</u> to an old-age insurance benefit for each month . . . .

<u>Id.</u> § 402(a) (emphasis added). "[A] person becomes 'entitled' to benefits once he or she has actually stopped working and applied." <u>Stroup v. Barnhart</u>, 327 F.3d 1258, 1261 n.4 (11th Cir. 2003) (citing 20 C.F.R. § 404.203).

Because plaintiff was not entitled to receive RIB until 1998, the ALJ correctly held that the WEP applied to her.

> 3. *The ALJ's application of the WEP to Guitart is not an ex post facto deprivation of property in violation of the Fifth Amendment.*
>
> 4. *The ALJ's application of the WEP to Guitart does not unconstitutionally discriminate against her.*

Guitart's contention that the WEP cannot be retroactively applied to her implicates her Fifth Amendment right to due process, which she couches in terms of an ex post facto deprivation of property. She also makes an equal protection challenge under the Fifth Amendment that the WEP unconstitutionally discriminates against her because she was fully insured and therefore eligible for RIB before 1986.

Both of these Fifth Amendment challenges to a social welfare program are analyzed under a rational basis standard. "'It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due

process violation to establish that the legislature has acted in an arbitrary and irrational way.'" United States v. Northeastern Pharm., 810 F.2d 726, 733 (8th Cir. 1986) (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976)). Accordingly, the court treats these two assignments of error together.

Guitart argues that the WEP unconstitutionally deprived her of vested property rights in her RIB that were acquired before 1986. The Ninth Circuit has rejected this identical argument. Plaintiff was not deprived of any property right because "[s]ocial security retirement benefits are statutory, and not contractual. These benefits may be altered or eliminated at any time." Das, 17 F.3d at 1256 (citing Fritz, 449 U.S. at 174). This court agrees with the Ninth Circuit's analysis and holding.

Even if Guitart had a vested right in her fully insured status before 1986,

> the test under the Due Process Clause is not whether the claimant has been deprived of a vested right to retirement benefits. Retroactive legislation by its very nature will always readjust pre-existing rights and burdens and the mere fact that such legislation upsets otherwise settled expectations does not create any due process problem. Indeed, "[m]ost [retroactive] legislation adversely affects some while benefitting others; laws are 'harsh and oppressive' in a constitutional sense only when Congress enacts them with an irrational or arbitrary purpose."

Robinson, 1989 WL 280369, at *5 (citing Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984); Northeastern Pharm., 810 F.2d at 733) (quoting Rhinebarger v. Orr, 839 F.2d 387, 389 (7th Cir. 1988)).

Thus,

> [d]ue process is satisfied "simply by showing that the retroactive application of the legislation is itself justified by rational legislative purpose." "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgment about the wisdom of such legislation remain[s] within the exclusive province of the legislative and executive branches."

Id. at *4 (quoting Northwestern Pharm., 810 F.2d at 733-34 (quoting Pension Benefit Guaranty Corp., 467 U.S. at 730, 729)).

Several courts have "recognized that Congress may retroactively repeal even 'vested' rights to Social Security benefits without creating any due process problem, so long as there exists a rational legislative purpose." Id. at *6 (citing Jensen v. Hecker, 766 F.2d 383, 385 (8th Cir. 1985); Jones v. Reagan, 748 F.2d 1331, 1339 (9th Cir. 1984)).

In Robinson, the district court rejected an argument similar to Guitart's. An amendment to the Act applied retroactively to eliminate the "vested" RIB of the plaintiff, a retired, senior status, federal district judge who had chosen to continue working after his election of senior status and who continued to receive a federal salary for his lifetime, regardless whether he worked. During a few months following his election of senior status, plaintiff's salary was subject to the Social Security system, FICA taxes were deducted from his salary and he attained enough quarters of coverage to qualify for RIB. However, the amendment eliminated plaintiff's right to collect RIB when it retroactively

14

removed judges' salaries from the Social Security system. The court held that the amendment had a rational legislative purpose of correcting a prior inequity in the law. The inequity was that senior judges who worked during their retirement were subject to having FICA taxes deducted from their salaries, while senior judges who chose not to work had no such deductions. Thus, the legislation favorably affected the majority of senior judges in the same situation by eliminating FICA deductions for all senior status judges who chose to continue working.

In rejecting plaintiff's argument that the amendment retroactively and inequitably deprived him of his vested right to RIB, the court reasoned:

> Claimant has chosen to ignore the obvious rational justification for this legislation: Congress intended the exemption to apply retroactively in order to remove the unfair penalty that had been imposed on [other] senior judges who worked during the first three months of 1986. The purpose of applying the exemption retroactively, therefore, is not related to regaining the services of senior judges but rather to correct an inequity that had been created by the prior legislation.
>
> .... As long as the classification selected by Congress produces a rational result in most cases, it cannot be considered arbitrary or unlawful.

Id. (citing Owens, 476 U.S. at 345-46 ("the massive scope of the Social Security program permits Congress to make generalizations")).

Similarly, and specifically addressing the constitutionality of the WEP, several appellate and district courts have held that the WEP had the rational purpose of

preventing workers who were covered by both Social Security and a government pension program from receiving a windfall in their RIB.

> Congress enacted the WEP in order to eliminate the windfall that arises when individuals "split their careers between [1] employment in which their earnings were taxed for social security and [2] other employment, such as [government] employment, in which their earnings were exempt from social security." Congress reasoned that an overlap of benefits would occur, because the civil service pensions paid to government employees "are generally designed to take the place both of social security and a private pension plan for workers who remain in government employment throughout their careers."

Bowman v. Barnhart, 218 F. Supp. 2d 960, 964 (N.D. Ill. 2002) (quoting Rudykoff v. Apfel, 193 F.3d 579, 580-81 (2d Cir. 1999); H.R. REP. NO. 25, at 21-22 (1983), reprinted in 1983 U.S.C.C.A.N. 219, 239-40)). "We agree [with the Second and Ninth Circuits] that the WEP, which was enacted to eliminate a windfall to individuals who are eligible to receive pensions based on both covered and noncovered employment in order to protect the Social Security Trust Fund, is rationally related to the achievement of legitimate goals and is therefore Constitutional." Doyle, 2004 WL 3254668, at *4 n.1 (citing Rudykoff, 193 F.3d at 579; Das, 17 F.3d at 1255-56).

> In the equal protection context, just as with a due process challenge, the court
>
> will uphold a classification under the Act as consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." The Supreme Court has held that, as long as "the classification has some 'reasonable basis,' it does not offend

16

the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

Bowman, 218 F. Supp. 2d at 965 (quoting Dandridge v. Williams, 397 U.S. 471, 487 (1970) (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911))).

This court agrees with the other courts that have previously addressed the question and finds that the WEP survives rational basis scrutiny. The legislature's desire to eliminate the overlap of retirement benefits that would occur when a government employee receives both a civil service pension and social security benefits for private sector employment is a legitimate goal. The WEP is rationally related to that goal by preventing government employees from obtaining a windfall of retirement benefits that individuals in the private sector typically do not receive. Further, the treatment of government employees is not irrational, because civil service pensions were designed to take the place of, not supplement, social security and private pensions for those individuals remaining in government employment throughout their careers.

Id. at 965-66; accord Rudykoff, 193 F.3d at 581; Das, 17 F.3d at 1255; Doyle, 2004 WL 3254668, at *4 n.1; Robinson, 1989 WL 280369, at *6.

The judicially recognized rational congressional purpose for the WEP uniformly recognized by the courts to date is sufficient to withstand Guitart's challenges to the WEP on both due process and equal protection grounds. Accordingly, these assignments of error lack merit.

17

> 5. *The Commissioner did not err by applying an allegedly unfair and discriminatory law just because it was enacted by Congress.*

Guitart argues that the Commissioner has conceded that the WEP is unfair and discriminatory because an assistant regional commissioner said in denying plaintiff's request for reconsideration that "[w]e can sympathize with your contention that WEP is unfair." (Tr. 28). Plaintiff contends that the Commissioner therefore is not obligated to apply the statute to her.

As discussed in the previous section, the court finds that the statute is neither discriminatory nor unconstitutional. In addition, Guitart states no legal authority, and there is none, for the proposition that a government agency charged with implementing the laws passed by Congress can decide not to apply a valid law simply because the agency is sympathetic to plaintiff's contention that the law results in some "unfairness" to her. The law as enacted by Congress is the law that must be applied, regardless what personal or even official opinions may have been expressed by any individual agency employee. This assignment of error must fail.

## CONCLUSION

Even if Guitart stated a claim for a deprivation of procedural due process, she received constitutionally adequate due process. The WEP does not violate the Fifth

Amendment's guarantees of either equal protection or due process and the Commissioner did not err by applying the statute to plaintiff.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

Houma, Louisiana, this 28th day of September, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE